USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/6/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                 :

BEEP, INC.,
                                                 :

                             Plaintiff,      :     Case No. 1:25-cv-07626 (JGK) (SN)

                                                 :

     -against-                              :     Hon. J. John Koeltl

                                                 :

BENTELER TRADING INTERNATIONAL AG  :
AND CAB HOLDING GMBH,
                                                 :

                             Defendants.   :
------------------------------------------------------- x

**AGREEMENT GOVERNING THE PROTECTION AND EXCHANGE OF**
**DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

The parties, by and through their respective undersigned counsel, hereby stipulate and agree to the form and entry of this protocol for the discovery of Electronically Stored Information in the above-captioned matter.

**I.      DEFINITIONS**

     A.     "ESI" or "Electronically Stored Information" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other physical or virtualized devices or media. ESI includes, but is not limited to, email, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible electronically stored information relevant to the claims or defenses of any party subject to discovery pursuant to Fed. R. Civ. P. 34.

     B.     "Native Format" means ESI in the electronic format of the application in which such ESI is created, viewed and/or modified.

C.      "Metadata" means (1) information associated with a native file that is not ordinarily viewable or printable from the application that generated, edited or modified such native file which describes the characteristics, origins, usage or validity of the electronic file or (2) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, deleted or otherwise manipulated by a user of such system.

D.      To the extent a technical term is not defined herein, the meaning of those technical terms shall be the same as set forth in the "The Sedona Conference Glossary:  E-Discovery and Digital Information Management," Fifth Ed., February 2020.

## II.    GENERAL PROVISIONS

A.      The agreements set forth herein are without prejudice to the right of a party to request additional information about, or production of, additional ESI, or object to such requests for information or production on grounds related to the particular request. The parties shall confer in good faith with regard to whether such additional efforts are reasonably required and, if so, who should bear the cost, and may seek assistance from the Court to resolve such disputes if agreement cannot be reached.

B.      The parties shall make reasonable efforts to comply with and resolve any differences concerning compliance with this protocol. If a responding party cannot comply with any aspect of this protocol, such party shall inform the requesting party as to why compliance with the protocol is unreasonable or not possible. No party may seek relief from the Court concerning compliance with this protocol until it has conferred with the other party to this action.

C.      The parties and their counsel shall conduct discovery in a manner consistent with the FRCP 1 mandate to seek the just, speedy, and inexpensive determination of litigation. Counsel must balance their obligation to zealously represent their clients with the collective obligation to

conduct discovery in a cooperative and efficient manner. Counsel shall be mindful of the certifications being made via their signatures on discovery documents and filings under FRCP 26(g)(1)(B)

D.      Each producing party has an independent and separate obligation to search for and produce paper documents responsive to a discovery request.

## III.    IDENTIFICATION OF RESPONSIVE ESI

A.      **Search for Discoverable ESI.** Documents and ESI which are neither privileged nor otherwise protected against disclosure shall be timely produced in response to a reasonable request for the production of such documents, and the producing party shall conduct a reasonable and good faith search for responsive ESI.

B.      **Custodians.** The responding party shall disclose to the requesting party the persons it believes in good faith to be most likely to possess ESI and other documents potentially responsive to the requesting Party's Request for Production. These individuals shall be considered the "custodians" whose email and other ESI will be searched in this matter. The designation of the initial custodians is without prejudice to the right of a party to identify custodians of the other party to determine if such identified custodian(s) possess information or knowledge relevant to the subject matter of this litigation. The parties will work in good faith to avoid duplication or redundancy in designating or identifying custodians.

C.      **Non-Custodial Sources**. The responding party shall disclose to the requesting party the non-custodial systems and locations it believes in good faith to be most likely to contain ESI and other documents potentially responsive to the requesting party's Request for Production.

D.      **Date Range.** The parties will confer and reach agreement on an appropriate date range for searching potentially responsive ESI.

E.    **Sources of ESI.** The parties will confer and reach agreement that the following data sources shall be preserved and searched for each of the custodians identified in Paragraph III.C, above: (1) any and all email mailbox(es) containing potentially responsive ESI, (2) network-based or cloud system file shares (individual, project, and/or department/group), (3) user-created content on laptop/desktop computer hard drive(s), provided that they are not duplicative of documents contained in network-based file shares, (4) collaboration tools such as Microsoft Teams, Slack, and other similar tools; (5) chat data from any chatbot including Skpe, Slack, Chat GPT, Google Gemini, Claude and other similar chatbots, and (6) mobile devices such as iPads and mobile phones.

F.    **Preservation.** The parties represent that they have taken reasonable steps to preserve hard copy documents and reasonably accessible ESI related to this action. These steps include, but are not limited to, providing written notice to custodians identified as likely to have discoverable information.

G.    **Search Terms.** If a responding party intends to limit a response by search terms, the responding party shall disclose to the requesting party the search terms and any other culling/search criteria it intends to apply ("Proposed Search Terms") to filter the sources of ESI for the identified custodians. If the requesting party has good cause to object to the search terms used by the responding party, or would like additional search terms used, it shall inform the responding party of the objection(s) or additional search terms in writing within fourteen (14) days of receiving the Proposed Search Terms. The parties will then confer in good faith to reach agreement on any alternative or additional search terms. If the parties cannot reach an agreement within fourteen (14) days of receiving the requesting party's objections or additional requests, or within any other period of time agreed to by the parties in writing, the requesting party may seek

relief from the Court. The parties shall also agree on the timing and conditions of any additional searches that may become necessary in the normal course of discovery.

H.    **<u>Technology Assisted Review in lieu of Search Terms.</u>** In lieu of identifying responsive ESI using the search terms and described in Section III.G above, a party may use a technology assisted review ("TAR") platform to identify potentially relevant documents and ESI. To the extent a producing party elects to use TAR to identify potentially relevant documents and ESI, the parties agree to meet and confer regarding an appropriate protocol, to include, at a minimum, disclosure of the TAR tool or application being used, precision/recall metrics, agreed stopping points, and elusion testing, sampling, and validation.

I.    **<u>No Responsiveness Presumption.</u>** The fact that a document is captured by a search pursuant to this protocol does not mean that such document is responsive to a discovery request or otherwise relevant to this litigation. Discovery requests and the parties' responses thereto shall govern the scope of documents to be produced, subject to the parties' objections and any agreements reached in the parties' meet-and-confer process.

J.    **<u>Cross-border Discovery.</u>** The parties shall take all reasonable steps to promptly respond to, and produce documents responsive to, requests for production while complying with applicable foreign laws regarding cross-border discovery, the FRCP, and relevant case law. These reasonable steps shall include a producing party investigating all possible foreign jurisdictions from which production could be made of duplicative potentially relevant documents or information, and producing from the jurisdiction which allows for the most expeditious production in this litigation. The parties shall promptly meet and confer when a producing party identifies potentially relevant documents which it believes will need special treatment under any foreign law

regarding cross-border discovery, including, but not limited to, Article 271 of the Swiss Criminal Code and/or the EU GDPR.

## IV.     PRODUCTION OF ESI

A.     **General Document Production Format.** Other than special file types as set forth in Section IV.B below, a producing party need not produce documents in native format unless it is reasonably requested by the opposing party and material to the action. The following provisions shall generally govern the production format and procedure for ESI other than special file types as described in Section IV.B.

1.     **Format.** All ESI, other than the types identified in IV.B., shall be produced as searchable, color for color JPG or as single-page TIFF images with associated extracted text. Spreadsheets and other file types that do not easily render in image format shall be produced in native, with a placeholder TIFF image and associated extracted text.

Each image will be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production padded to the same number of characters; (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. Each image file shall be named with the Bates Number corresponding to the number assigned to the document page contained in that image. In the event a party determines that it is unable to produce in the format specified in this section without incurring unreasonable expense, the parties shall meet and confer to agree upon an alternative format for production.

2.     **Metadata.** To the extent that any of the following metadata fields associated with all applicable documents are available, the producing party will produce those metadata fields to the requesting party:

| Field | Description |
| --- | --- |
| Production Beginning Bates Number | The Bates label of the first page of the document. |
| Production Ending Bates Number | The Bates label of the last page of the document. |
| Production Beginning Attachment | The Bates label of the first page of a family of documents (e.g., email and attachment) |
| Production Ending Attachment | The Bates label of the last page of a family of documents (e.g., email and attachment) |
| File Name | The filename of an attachment or stand-alone efile. |
| Original File Path | Path where original native document was stored |
| Custodian | The custodian(s) of the document |
| All Custodians | List of all custodians in possession of the document in the event that global deduplication was used during processing. See Section IV.C. below. |
| File Extension | The original filename extension suffix (e.g., .doc,.pps, .jpeg, .txt, .xls). |
| Email Subject | The subject of an email. |
| Date Sent | For email, the sent date of the message. |
| Time Sent | For email, the sent time of the message. |
| Date Received | For email, the receive date of the message. |
| Date Created | For efiles or attachments, the document's creation date or operating system creation date. |
| Time Created | For efiles or attachments the documents' creation date or operating system creation date. |
| Date Modified | For efiles or attachments, document's last modified date or operating system last modified date. |

| | |
|---|---|
| Time Modified | For efiles or attachments, the document's last modified time or operating system last modified time. |
| Author | The author of a stand-alone efile or attachment. |
| From | The sender of an email message. |
| To | The recipients of an email message, in a semicolon delimited multi-value list. |
| CC | The copyee(s) of an email message, in a semicolon delimited, multi-value list. |
| BCC | The blind copyee(s) of an email message, in a semicolon delimited multi-value list. |
| MD5 | The calculated MD5 hash value of the document. |
| File Size (bytes) | Size of native file document/email in bytes. |
| Processing Time Zone | UTC |
| Relative Path to Native File | The file path to the location of the native file if produced natively. |
| Relative Path to Text File | The file path to the location of the extracted text or OCR text file. |
| Confidentiality Designation | The confidentiality designation, if any, for the document pursuant to any protective order in the case. |
| Redacted | (document level – Yes/No) |
| For Messages Produced in RSMF format:<br><br>1. Rsmf/Application<br>2. Rsmf/AttachmentCount<br>3. Rsmf/EndDate<br>4. Rsmf/BeginDate<br>5. Rsmf/EventCollectionID<br>6. Rsmf/ContainsDeleted<br>7. Rsmf/Generator<br>8. RsmfConversation-Identifier | |

8

No party has an obligation to create or manually code metadata fields that are not automatically generated by the processing of the properly collected ESI or that do not exist as part of the original metadata of the electronic document except for (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Confidentiality; and (6) Custodian. Custodians should be identified using the convention "Last Name, First Name" or identify the data source if there is no individual custodian. For redacted documents the producing party is not required to produce extracted text but should produce OCR text.

3.    **Appearance.** Each document's electronic image shall convey the same information and image as the original document except for redactions for any privilege. Documents shall appear with any such redactions, revisions and/or comments visible and printed. Documents that present imaging or formatting problems shall be promptly identified and the parties shall meet and confer in an attempt to resolve the problems.

4.    **Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the producing party or shall be documented in a load file or otherwise electronically tracked.

5.    **Color.** If a photograph or color document conveys meaning or color is necessary to meaningfully review the document, color images shall be produced for information that is maintained in color in the ordinary course of business.

6.    **Families.** For document families that contain both responsive and non-responsive documents, the cover emails must be produced for context unless wholly privileged. However, only the responsive attachments need be produced.  All non-responsive documents in a family (e.g., a non-responsive attachment to a responsive email)

must be slip-sheeted with the following statement "Withheld for Relevance." The slip-sheet should be Bates numbered. Likewise, non-responsive, proprietary information in a document may be redacted.

7.    **Linked Documents**. Linked files or "modern attachments" (i.e., hyperlinks pointing to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message as has been historically common with email communications), are not child documents in the traditional sense, both because the data resides in a different location than the document linking to it and because that may have been modified since the document linking to it was created or sent.  If after production, a receiving Party believes particular embedded file(s) and/or modern attachment(s) are responsive, non-privileged and are not duplicative of any other source, the parties shall meet-and-confer to assess collection of the identified embedded file(s) and/or modern attachment(s), including assessing burden and cost, and, if applicable, production format. The parties understand that existing tools may not be able to provide historical document versions that correspond to the document as circulated when the hyperlink was provided. There is no obligation for a party to obtain copies of hyperlinked documents that are within the possession, custody and/or control of third parties.

8.    **Exception Files.** If a responding party has reason to believe a document is responsive to discovery requests, files that cannot be produced or imaged due to technical difficulties shall be identified with a placeholder image. Common exception files include, without limitation, corruption, password protection, digital rights management, or

proprietary software associated to the file. Producing parties shall make best efforts to identify and provide receiving parties with decrypted versions of protected documents.

9.      **Redacted Documents.** Redactions shall only be permitted for privileged information. A party producing ESI that requires redaction must convert it to an image format and redact the image file for production. The unredacted content of the ESI shall be searchable within the produced image file/included in the corresponding text file.  The redaction box shall clearly mark that is it "Redacted for Privilege"

B.      **Production Format for Other File Types.** ESI that is difficult to render in TIFF, such as video files, audio files, PowerPoints, text messages, or excels should be produced in their native form with a placeholder TIFF image stating "Document Produced Natively." Regarding text messages the following principles shall apply:

1.      **Scope of Messages to Be Preserved and Produced.** Text messages include, but are not limited to SMS, MMS, iMessage, RCS messages, WhatsApp, Slack, Teams, instant messages, generative AI chatbot messages, and messages exchanged through native or non-native device messaging applications. Unless otherwise agreed, this category includes message content (text, emojis, reactions), attachments (images, videos, audio files), sender and recipient information, date and time stamps, conversation/thread structure, and message status indicators where available (send, received, read).

2.      **Preservation Obligations.** Each producing party shall take reasonable steps to preserve relevant text messages in their native format, including disabling auto-delete or message-expiration settings. The parties will preserve hard copy documents and reasonably accessible ESI, and will collect ESI in a forensically sound, non-altering manner that maintains metadata, integrity and parent child links. Each party will issue and

monitor legal holds, suspend routine deletion (including auto delete/expiration for texts and collaboration data), and preserve message content, edits/deletions, reactions, threading, and attachments where available. Metadata will be produced only as it exists and is reasonably accessible.

3.   **Acceptable Collection Methods.** Text messages shall be collected using forensically sound, industry-standard  methods that preserve message integrity and metadata. Conversion to RSMF Short Message Data selected for review or production shall be converted into RSMF containers consistent with Relativity's published schema and best practices. Each RSMF file shall represent a defined conversation segment, typically a single thread for a defined time range, using consistent segmentation rules (e.g., per conversation per day or per conversation per week) applied uniformly. Screen captures or manual copying shall not be allowed.

4.   **Prohibited or Disfavored Methods.** Screenshots are not acceptable Forwarding messages via email or copy-and-paste methods is disfavored except for de minimis productions, where agreed by the parties, or when the production is from a non-party. Truncated, selective, or edited threads are not acceptable absent agreement or court order, except as otherwise permitted in this protocol.

5.   **Format of Production.** Unless otherwise agreed, text messages shall be produced in one of the following formats: (1) PDF, with complete conversation threads, including visible timestamps, sender/recipient identifies, and attachments; (2) HTML or TXT, with preserved message order and metadata fields; or (3) Native or Near-Native Exports, where generated by forensic tools, accompanied by a readable rendering. In terms of metadata, to the extent available, production shall include: Sender and recipient phone

numbers or identifier, message date and time (with time zone), message type (SMS, MMS, iMessage, RCS, etc.), and attachment filenames and types.

6.   **Thread Integrity.** Messages shall be produced as entire conversation threads, not isolated excerpts for the relevant custodians and time periods, unless redaction or limitation is agreed or ordered, or allowed pursuant to this Protocol. Redactions for privilege, if any, shall be clearly marked.

7.   **Authentication and Verification.** Upon request, the producing party shall identify: the device type and operating system used, the extraction method and tool (including version), and whether the data was collected directly from the device, a local backup, or a cloud backup. No forensic affidavit is required absent agreement or court order.

8.   **Cost and Burden.** Each party shall bear its own costs of collecting and producing its text messages unless otherwise agreed or ordered. The parties shall meet and confer in good faith if a party contends that extraction requires disproportionate effort or specialized forensic intervention.

C.   **Duplicate Production Not Required.**

1.   **Deduplication generally.** ESI files need only be produced once, and the parties shall make reasonable efforts to deduplicate ESI. The producing party will apply global deduplication to responsive ESI based on MD5 Hash values or an equivalent deduplication key. Email will be deduplicated by family, not on an individual basis. Therefore, where an exact duplicate document has an attachment, the hash values must be identical for both the document plus attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. Otherwise, any such

13

family must be produced without deduplication of any family member. Additionally, to the extent reasonably accessible, all custodians of removed duplicated will be listed in an "All Custodians" field and identified by full name of the individual or departmental custodian. Standalone documents may be deduplicated against email attachments provided that the email attachment is the duplicate that is produced and the custodian(s) of the removed duplicate(s) are entered into the All Custodian field. All natives, even deduplicated versions, will be retained in a format readily accessible to be produced upon request upon a showing of good cause.

2.    **Threading and deduplication of emails.** For emails, in order to reduce the volume of entirely duplicative content within email threads, the parties may utilize threading or "email thread suppression" prior to production. As used in this protocol, "email thread suppression" means reducing the production of duplicative content contained within an email thread, by producing the most recent email containing the complete thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. Where an email thread branches into more than one conversation, which results in the entire conversation not being contained within a single email, the producing party shall produce the most recent emails sufficient to contain each of the complete conversations, as well as all attachments. An email shall only be removed from production if 100% of the message body is contained, all addresses are included, and all attachments are included in a later email that is produced. When there are one or more privileged emails on a thread, the Producing Party need only include one entry on the privilege log for that email thread, and need not log each email contained in the thread separately, provided that the privilege log sufficiently identifies all senders

14

and/or recipients of all the privileged email(s) in question separately for each privileged email in the chain. To the extent that a thread contains both privileged and non-privileged emails, the Producing Party may either produce the thread with the privileged emails redacted or produce the most inclusive portion of the email thread that does not contain privileged content, while continuing to note the remaining privileged portion of the thread on the privilege log, as noted above.

D.    **Production Media.** ESI and related files will be provided through a secure FTP link.

E.    **Privilege Logs.** A party withholding documents or producing documents that contain redactions, based on one or more claims of privilege and dated prior to the date of the filing of the original Complaint in this case, shall produce a privilege log. For each entry, the privilege log shall contain the following information: (1) a number (i.e. 1, 2, 3) to allow the parties to later meet and confer or discuss certain documents easily, (2) the date of the document (i.e., the date of the last email in the email chain), (3) author(s) or sender(s) of the communication, (4) all recipients (including any recipients carbon copied or blind carbon copied), (5) document type (for example, a letter, facsimile, email, memorandum, etc.), (6) the filename or email subject (7) filenames any privileged attachments, and (8) the nature of the privilege or other rule of law asserted as the basis for nonproduction.

The parties are only required to provide a single privilege log entry for multiple privileged email messages/communications in the same email thread that have the same senders and recipients to the extent such messages are included within one individual email thread. The email that will be logged will be the most inclusive thread with any associated attachments. Each attachment, however, should be logged separately as a standalone document.

15

There shall be no obligation to include on such privilege logs identification of attorney-client communications or work product concerning case strategy or the course of the litigation that occur following the commencement of this lawsuit, including the efforts to locate and collect documents and ESI in response to a discovery request in this matter.

F.    **Redacted Documents.** Documents that contain both privileged and non-privileged/work product protected information will be produced with the privileged/protected information redacted and the non-privileged/protected information visible. Specifically, the producing party shall leave visible the to/from, date, time, subject line (where not privileged), and the signature block to allow the parties to determine the senders/recipient/authors of each partially privileged document.

If any information is redacted based on a claim of privilege, during the pendency of this action, an electronic copy of the original, unredacted data shall be preserved without modification, alteration, or addition to the content of such data, including any metadata associated therewith.

G.    **Issues Regarding Production Format.** The parties shall meet and confer to the extent reasonably necessary to resolve any issues regarding production format and to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

V.    **MISCELLANEOUS PROVISIONS**

A.    Each party will presumptively bear its own costs of production. The parties reserve the right to seek cost shifting as appropriate at a later time.

B.    Preservation During Dispute.  Should a dispute arise as to the discoverability of any ESI, the parties shall promptly take reasonable steps to preserve the subject ESI until they (or the Court) resolve the dispute.

16

C.      Process for Resolving Disputes. A party may obtain relief from any portion of this Order through the written consent of all other parties to this litigation or through a subsequent Court order. A party may not seek relief from the Court unless the party has conferred in good faith with the opposing party. When conferring about a proposed modification of this Order, the parties shall act expeditiously and consistent with the controlling principles set forth in Section II of this Order.

D.      Nothing in this protocol shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at the appropriate time.

E.      The parties may agree to modify or waive the terms of this protocol in writing signed by counsel for the affected parties.


SO STIPULATED AND SO AGREED


/s/ Michael D. Hynes                                                Dated: April 2, 2026
Michael D. Hynes
Marc A. Silverman
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
(212) 335-4500
michael.hynes@us.dlapiper.com
marc.silverman@us.dlapiper.com

*Attorneys for Plaintiff Beep, Inc.*

/s/ John Robinson                                                   Dated: April 2, 2026
John Robinson (*pro hac vice*)
**KIRKLAND & ELLIS LLP**

SO ORDERED.

_____
SARAH NETBURN
United States Magistrate Judge

Dated:   April 6, 2026
            New York, New York

*Attorney for Defendants Benteler Trading*
*International AG and CAB Holding GmbH*