UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

BEEP, INC.,

                              Plaintiff,

        - against -

BENTELER TRADING
INTERNATIONAL AG AND CAB
HOLDING GMBH,

                              Defendants.

———————————————————

25-cv-7626 (JGK)

<u>Memorandum
Opinion and Order</u>

**John G. Koeltl, District Judge:**

The plaintiff, Beep, Inc. ("Beep"), filed this action for breach of contract and breach of the implied covenant of good faith and fair dealing against the defendants, Benteler Trading International AG ("BTI") and CAB Holding GmbH ("CAB"). The defendants now move to dismiss the Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the defendants' motion is **denied**.

## I.

Unless otherwise noted, the following facts are taken from the Complaint and are accepted as true for purposes of deciding this motion.

Beep is a Delaware corporation with its principal place of business in Florida that specializes in the deployment, operation, and management of autonomous electric vehicles ("AEVs"). Complaint ("Compl.") ¶¶ 12–13, ECF No. 1. BTI is a Swiss company that manages and finances the sale of AEVs, called "Movers," manufactured by Holon GmbH, a German company related

to BTI, and marketed in the United States by Holon GmbH's American affiliate, Holon U.S., Inc. ("Holon"). Id. ¶ 1; Decl. of Gilad Bendheim in Supp. of Defs.' Motion to Dismiss ("A.A."), Ex. 1 at 2, ECF No. 50-1.

In August 2024, Beep and BTI executed an agreement (the "Alliance Agreement") pursuant to which Beep agreed to advance BTI $30 million to help BTI launch an autonomous vehicle program in the United States. Compl. ¶ 3. Beep and CAB subsequently entered into a Guarantee Agreement (the "Guarantee"), whereby CAB agreed to guarantee BTI's obligation to repay the $30 million advance to Beep. Id. ¶ 5.

Pursuant to the Alliance Agreement, BTI represented that Holon had agreed to: (1) relocate its manufacturing facility to Jacksonville, Florida; (2) lease or purchase land (or an existing manufacturing plant) for the facility by November 8, 2024; (3) deliver test Movers by May 31, 2025; and (4) achieve the start of production ("SOP") by October 1, 2026, "unless, in each case, the delay is due to a Benteler Excused Performance." A.A. §§ 1, 3(B). The Alliance Agreement defined a "Benteler Excused Performance" as:

> [A] cause beyond the reasonable control of Holon, such as, without limitation, force majeure event, extensive supply chain impacts to a critical component of the Holon Mover that Holon could not have reasonably foreseen, applicable regulatory approvals and inability to obtain necessary financing through commercial lenders due to a downturn in economic markets and conditions, and not mere inconvenience.

2

Id. § 1.[1] The Alliance Agreement also provided that BTI will not propose any Movers for sale or lease in the United States "independently of Beep," and that BTI had the authority to bind Holon. Id. §§ 3(E), 13(A). Finally, the Alliance Agreement provided for "liquidated damages" in the event that Holon failed to "timely perform" certain obligations, including those listed above. Id. § 12(D).

In the Complaint, Beep alleges that: (1) Holon has not purchased land for a Florida-based manufacturing facility; (2) Holon has not delivered any test Movers; (3) BTI has repudiated its obligation to achieve SOP by October 1, 2026; (4) BTI has not involved Beep in its efforts to sell and lease Movers in the United States; and (5) BTI lacked the authority to bind Holon in the first instance. See Compl. ¶ 133. Beep accordingly alleges that BTI has breached the Alliance Agreement and that it is entitled to liquidated damages. Beep initiated this action on December 15, 2025, asserting claims for breach of contract and breach of the covenant of good faith and fair dealing. See generally Compl. CAB moved to dismiss the Complaint for improper service pursuant to Federal Rule of Civil Procedure 12(b)(5), and Beep moved to authorize alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3). Beep v. Benteler Trading Int'l AG, No. 25-cv-7626, 2026 WL 205598, at *1 (S.D.N.Y. Jan. 26, 2026). The Court denied CAB's motion and granted Beep's motion. Id. The defendants now jointly move to dismiss the Complaint

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See Notice of Mot., ECF No. 48.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the facts alleged in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

Finally, when presented with a motion to dismiss a complaint, the Court may consider documents attached to or referenced in the complaint, documents either possessed or known about and relied on in bringing the

lawsuit, or matters of which judicial notice may be taken. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).

### III.

In the Complaint, Beep pleads breach of contract claims against BTI and CAB based on several alleged breaches of the Alliance Agreement; Beep also pleads a claim for breach of the covenant of good faith and fair dealing against BTI only. The defendants argue that Beep has failed to state a claim under either theory and, additionally, that Beep has failed to plead an actionable injury.

### A.

To state a claim for breach of contract under New York law,[2] a plaintiff must allege: "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 921 N.Y.S.2d 260, 264 (App. Div. 2011). The defendants argue that Beep has failed to allege plausibly any breach of the Alliance Agreement.

---

[2] Both parties agree that New York law applies to Beep's claims. "Under New York choice of law rules, where both parties agree as to the applicable law, that agreement is sufficient to establish choice of law." Excelsior Cap. LLC v. Allen, No. 11-cv-7373, 2012 WL 4471262, at *9 (S.D.N.Y. Sept. 26, 2012), aff'd, 536 F. App'x 58 (2d Cir. 2013) (summary order). The Court therefore "follow[s] their lead." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

**1.**

Beep first alleges that BTI breached its representations and warranties in § 13(A) of the Alliance Agreement by misrepresenting that BTI had the authority to bind Holon. See Compl. ¶¶ 76–82, 133(a)–(b). Section 13(A) provides that BTI "has all requisite corporate power and authority to carry on its business as contemplated herein," that "no further consent, approval or authorization is required, and all requisite consents have been obtained prior to the execution of this Agreement," and that "there are no agreements or other restrictions by which it is bound that prevents its performance hereunder." A.A. § 13(A). Beep alleges that "BTI represented to Beep that it had the authority to bind Holon US to perform as required under the Alliance Agreement" and that "this representation was false." Compl. ¶¶ 81–82. Beep also alleges that BTI "represented in the Alliance Agreement that its agreement with Holon US required Holon to satisfy the obligations set forth in the Alliance Agreement," but that "as of the date of the Alliance Agreement, BTI had not entered into [such an agreement] with Holon US, and, to this date, BTI and Holon US have still not entered into the [agreement] referenced in the Alliance Agreement." Id. ¶¶ 78, 80.

In support of their motion, the defendants argue that § 13(A) of the alliance agreement contains "standard, mutual representations about each party's internal governance and authority to control itself—not a unilateral representation by BTI that it controls Holon." Defs.' Mem. Supp. Mot. ("Br.") 7, ECF No. 49. The defendants also argue that the Alliance Agreement

"did not impose a date by which BTI is required to enter into" an agreement with Holon. Id. at 8. But these arguments raise issues of fact as to the correct interpretation of the Alliance Agreement that cannot be resolved on a motion to dismiss. See Bella v. Wilton Reassurance Life of N.Y., No. 23-cv-1613, 2025 WL 1616851, at *7 (S.D.N.Y. June 5, 2025) ("Crucially, the meaning of an ambiguous contract is a question of fact that cannot be resolved by the court on a motion to dismiss."). Beep has therefore plausibly alleged a breach of § 13(A) of the Alliance Agreement.

### 2.

Beep next alleges that BTI breached § 3(A) of the Alliance Agreement by failing to secure Holon's performance to make two test Movers available by May 31, 2025. Compl. ¶¶ 125–26, 133(c). In § 3(A), BTI represented that Holon "committed to develop the Holon Mover and meet the applicable Availability Dates for the PT1, PT2 and PT0 prototypes" of Movers "unless the delay is due to a Benteler Excused Performance." A.A. § 3(A). The Alliance Agreement further provides that the "Availability Dates" for the two PT1 test Movers was May 31, 2025. Id. § 1. In the Complaint, Beep alleges that the two PT1 prototypes were not delivered by May 31, 2025, and still have not been delivered. Compl. ¶¶ 125–26.

In support of dismissal, the defendants argue that "[t]he Complaint does not allege that Beep, Holon, and BTI agreed on the times and specifications of delivery, that BTI or Holon refused to deliver prototypes on an

agreed-to-date, or that BTI or Holon failed to make prototypes 'available' by the Availability Dates." Br. 11–12. But that is not so—the Complaint explicitly alleges that Holon did not deliver the test Movers by May 31, 2025. Compl. ¶¶ 125–26. The defendants also point to § 2(B) of the Alliance Agreement, which provides that "[p]rototypes shall be delivered to Beep at such times and in accordance with such specifications as may be agreed by Beep, Holon and Benteler from time to time." Br. 11. But such an argument again raises a question of fact as to the interpretation of an ambiguous contract that cannot be resolved on a motion to dismiss. See Bella, 2025 WL 1616851, at *7. Beep has therefore plausibly alleged breach of § 3(A) of the Alliance Agreement.

### 3.

Beep next alleges that BTI breached § 3(B) of the Alliance Agreement by failing to secure Holon's performance to procure a manufacturing site for Movers and by failing to secure Holon's performance to commit to SOP by October 1, 2026. Compl. ¶¶ 87–102, 133(d)–(e). In § 3(B), BTI represented, in relevant part, that (1) Holon had agreed to locate a manufacturing facility for Movers in Jacksonville, Florida, (2) Holon would purchase or lease land for the manufacturing facility by November 8, 2024, and (3) Holon would achieve SOP of Movers by October 1, 2026, unless the delay was due to a "Benteler Excused Performance." A.A. § 3(B). Beep alleges that Holon had not purchased or leased land for the Mover manufacturing facility by November 8,

8

2024, and has still yet to do so, Compl. ¶¶ 87–88, and that Holon postponed the SOP to late 2027, see id. ¶¶ 94–99.

In a footnote, the defendants argue that Holon's failures to purchase or lease land for the manufacturing facility and timely achieve SOP were "caused by circumstances beyond Holon's reasonable control that qualify as a "'Benteler Excused Performance'" under the Alliance Agreement. Br. 13 n.5. But this argument does not challenge the sufficiency of Beep's allegation of breach; instead, it raises a factual dispute regarding BTI's performance under the Alliance Agreement that cannot be resolved on a motion to dismiss.

The defendants' remaining arguments in favor of dismissal of the § 3(B) breach claims also fail. The defendants contend that under the Alliance Agreement, Holon's failure to meet the SOP deadline cannot constitute breach, but § 12 of the Alliance Agreement explicitly states that Holon's failure to perform the obligations under § 3(B) constitutes a breach. See A.A. § 12(D). The defendants further contend that Beep has failed to allege adequately that BTI anticipatorily breached the Alliance Agreement when it communicated that Holon would not achieve the SOP by October 1, 2026. Br. 12–13. However, contrary to the defendants' assertions, Beep alleges in the Complaint that on March 3, 2024, BTI informed Beep by email that "Holon has postponed the planned SOP to Q3/Q4 2027." Compl. ¶ 94. To the extent the defendants argue that BTI's email was not a "positive and unequivocal" repudiation of its intention to perform under the Alliance Agreement, as required by New York law, see St. Christopher's, Inc. v. JMF

Acquisitions, LLC, No. 20-3808, 2021 WL 6122674, at *2 (2d Cir. Dec. 28, 2021) (summary order), that argument fails because it raises an issue of fact that cannot be resolved on a motion to dismiss. Therefore, Beep has adequately alleged a breach of § 3(B) of the Alliance Agreement.

**4.**

Finally, Beep alleges that BTI breached § 3(E) of the Alliance Agreement by contacting Beep's prospective clients for the purpose of selling or leasing Movers independently of Beep. Compl. ¶¶ 103–124, 133(f). Section 3(E) of the Alliance Agreement provides that "[e]xcept as otherwise permitted under this Agreement and as set forth in § 5(C), [BTI] shall not . . . propose, either directly or indirectly, any Holon Movers for sale or lease in the [United States] independently of Beep, including the Beep Software and Managed Services." A.A. § 3(E). In the Complaint, Beep alleges that BTI breached this provision by "contacting Beep's Clients, Prospective Clients, and making deals without Beep." Compl. ¶ 114. Beep points specifically to an alleged partnership between BTI and Lyft to deploy Movers in the United States "independently of Beep beginning in 2026." Id. ¶ 115. The defendants raise several arguments in favor of dismissal, including that § 3(E) only prevents BTI from selling Movers without Beep's technology and that other provisions of the Alliance Agreement undermine the allegations in Beep's complaint. See Br. 8–10. Once again, these arguments raise factual issues as to the correct interpretation of certain provisions in the Alliance Agreement that cannot be

decided on a motion to dismiss. Beep has therefore alleged a breach of § 3(E) of the Alliance Agreement.

## B.

The defendants also contend that Beep's breach of contract claims fail because Beep has failed to plead any actionable injury. Br. 14–19. The defendants advance three arguments in favor of dismissal: first, that Beep has failed to plead cognizable damages; second, that the Alliance Agreement's liquidated damages clause is an unenforceable penalty; and third, that without the liquidated damages clause, Beep cannot recover any other damages. Id.

Under New York law, a liquidated damages clause is enforceable if the amount liquidated bears a reasonable proportion to the probable loss and the actual loss is incapable or difficult of precise estimation. See Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 619 (S.D.N.Y. 2018). First, the defendants' argument that the liquidated damages clause is a penalty cannot be resolved on a motion to dismiss. Id. at 619 n.13 (assertion that a liquidated damages clause is an unenforceable penalty is an affirmative defense).

In any event, as Beep persuasively argues, the $30 million is not a penalty, but instead represented precisely the amount that Beep paid to BTI to enter into the Alliance Agreement, and that amount is reduced by the amounts that Beep recovers under the Agreement while it is in existence. See Mem. of Law Opp. Mot. ("Opp.") 19–20, ECF No. 54; see also Compl. ¶¶ 3, 66. Contrary to the defendants' arguments, the allegations in the Complaint

demonstrate—at least at this stage—that $30 million is an accurate estimate of the damages that Beep has allegedly suffered. The defendants' contention that Beep has failed to allege damages adequately therefore fails.

*  *  *

Beep has adequately alleged breach of contract claims against the defendants. The defendants' motion to dismiss these claims is therefore **denied**.[3]

C.

The defendants also move to dismiss Beep's claim for breach of the covenant of good faith and fair dealing against BTI. The covenant of good faith and fair dealing, which New York law implies in all contracts, requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp., 554 F. Supp. 3d 568, 587 (S.D.N.Y. 2021). In the Complaint, Beep alleges that the Alliance Agreement "imposes on BTI an implied covenant of good faith and fair dealing to use Beep's $30 million investment to establish and develop Holon US's business in the United States" and that BTI breached the covenant by using the $30 million investment for purposes "unrelated to the Holon US business".

---

[3] The defendants argue that because BTI is not liable for breach of contract, CAB cannot be liable as BTI's guarantor, and any breach of contract claims against CAB should therefore be dismissed. Br. 21. However, as explained in the text, Beep has plausibly alleged breaches of multiple provisions of the Alliance Agreement. Therefore, the request to dismiss claims against CAB is **denied**.

Compl. ¶¶ 147–49. The defendants argue that Beep's claim for breach of the covenant of good faith and fair dealing "functions to invent a new obligation for BTI" not contained in the Alliance Agreement. See Br. 20-21. But that is not the case. Beep alleges that BTI acted in bad faith to deprive Beep of the fruits of its $30 million investment, see Compl. ¶¶ 145–49, and, at this stage, there is a question of fact as to whether the covenant has been breached. The defendants' motion to dismiss the claim for breach of the implied covenant of good faith and fair dealing is therefore **denied**.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **denied**. The Clerk is respectfully requested to close ECF Nos. 48 and 58.[4]

**SO ORDERED.**

Dated:      New York, New York
            June 8, 2026

_____
        John G. Koeltl
United States District Judge

---

[4] Oral argument is not necessary to decide this motion. The defendants' request for oral argument (ECF No. 58) is therefore **denied**.